# UNITED STATES DISTRICT COURT
for the
# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ALVIN C. ST. JULIEN** | * Civil Action No. 17-1563 |
| | * Jury Demand |
| **vs** | * |
| | * Judge _____ |
| **LQT INDUSTRIES, L.L.C.** | * Mag. Judge _____ |

## COMPLAINT

**NOW INTO COURT,** comes Plaintiff, Alvin C. St. Julien, through counsel, who respectfully represents that:

### Nature of Case
1.

This action arises from Defendant's violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.,* the Louisiana Employment Discrimination Law, La. R.S. 23:323, and the Family and Medical Leave Act (FMLA), Section 102 of FMLA Act of 1993 (29 U.S.C. §§ 2601-2654).

2.

The action is filed to provide Alvin C. St. Julien (St. Julien) relief for Defendant's unlawful employment discrimination and interference of FMLA rights.  St. Julien seeks monetary and equitable remedies for his past, present, and future wage loss, and mental and emotional distress.

### Jurisdiction and Venue
3.

Plaintiff's claim involves a federal question arising from the ADA and FMLA.

4.

Venue is proper because Plaintiff's claims arose out of events and omissions of which a substantial part occurred in the Western District [28 U.S.C. § 1391(b)(2)].

**Parties**

5.

Plaintiff Alvin C. St. Julien, during the time of the issues of concern in this case, was a resident of Broussard in Lafayette Parish.  He worked out of Defendant's corporate office in Broussard.  At all relevant times, Plaintiff met the definition of an employee and as a qualified individual under the ADA and FMLA.

6.

Defendant LQT Industries, L.L.C. (LQT, hereafter) is domiciled at 400 Poydras Street, Suite 1800; New Orleans, LA 70130 and has its corporate office at 5845 Highway 90 East in Broussard, Louisiana.

7.

LQT employed at least 20 employees during at least 20 weeks of 2015 or 2016.

8.

St. Julien had been employed with LQT for at least twelve months prior to LQT granting him leave on October 12, 2016.

9.

St. Julien had worked at least 1250 hours with LQT in the twelve months prior to October 12, 2016.

10.

LQT employed at least 50 employees at its Broussard worksite and its other worksites that were within 75 miles of Broussard during each of 20 or more calendar workweeks in 2015 or 2016.

11.

LQT is a business in which a labor dispute there would hinder or obstruct commerce or the free flow of commerce.

12.

LQT employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2015 or 2016.

13.

At all material times, Defendant was a covered entity and an employer within the meanings of FMLA, the ADA and ADA's state equivalent.

**Administrative Procedures**

14.

Plaintiff Alvin C. St. Julien filed an EEOC charge alleging disability discrimination. EEOC gave him charge # 461-2017-01029 on April 14, 2017; a date within 300 days of his December 12, 2016 termination.  Ex. 1.

15.

On November 21, 2017, EEOC wrote to Plaintiff's counsel agreeing to forward to St. Julien his right to sue.

16.

Plaintiff filed this Complaint within 90 days of the EEOC statement that St. Julien would soon receive his right-to-sue notice.

**Factual Allegations**

17.

LQT hired St. Julien on October 14, 2013 as a plumber to work at on-shore and off-shore work sites.

18.

St. Julien told LQT at his hiring that he took physician-prescribed narcotic pain medication because of a bad back (spondylosis, cervical radiculitis, sciatica, and radiculopathy).

19.

LQT told St. Julien that he could take his narcotic pain medication but not while at work.  LQT also required St. Julien forgo pain medication even while off work when working off-shore.  St. Julien complied with LQT rules.

20.

On October 16, 2014, LQT's company doctor reiterated LQT's policy allowing St. Julien to use narcotic pain medication while off-work when working onshore (brand name Norco for a combination of acetaminophen and hydrocodone).  Ex. 2.

21.

Besides St. Julien's discussions with LQT regarding his use of narcotic pain medication, LQT was also aware of his narcotic pain medication use because it

conducted urine testing for the presence of drugs including narcotics each year.

22.

LQT changed its drug-use policy for St. Julien in November 2016 when it now barred St. Julien's use of narcotic pain-medication even when not at work on-shore.

23.

St. Julien learned of LQT's new policy after he took medical leave for surgery in October 2016.  St. Julien's doctor found him fit to return to work on November 14, 2016.

24.

St. Julien's physician, Dr. Steve Wyble, M.D., required he continue taking narcotic pain medication for his bad back and to recover from surgery.

25.

In November 2016, LQT's Human Resources coordinator Herschel Reaux told St. Julien that could work at LQT only if he no longer took narcotic pain medication.

26.

Mr. Reaux sent St. Julien to LQT's company doctor at MedXcel on November 14, 2016.  The company doctor told St. Julien to discontinue all narcotic pain-medication use even when off-duty from working on shore.

27.

St. Julien told his physician that LQT's company doctor would only allow him to return to work if St. Julien no longer took narcotic pain medication.  St. Julien's doctor, Dr. Wyble, disagreed and ordered St. Julien to continue taking his narcotic pain

medication.

28.

Despite St. Julien's return to work from his physician, LQT would not return him to work unless St. Julien quit using his doctor-prescribed narcotic pain medication.  St. Julien refused.

29.

Supervisor Randy Dardar told St. Julien he could return to work if he quit taking his doctor-prescribed narcotic pain medication

30.

On December 12, 2016, LQT fired St. Julien.  LQT claimed it fired him because of a "Layoff" given that it was a "Reduction in force hasn't worked in 30 days".

31.

If LQT meant that there was a layoff, only St. Julien was laid off.

32.

If LQT meant that it had fired St. Julien because St. Julien had failed to show up for work for at least 30 days, this was not St. Julien's fault.  St. Julien had provided LQT a physician's return to work 27 days before he was fired.  St. Julien had been absent 33 days before he gave LQT the return to work but that was for approved medical and FMLA leave.  St. Julien had only taken eight of the twelve weeks available to him under FMLA when LQT fired him.

33.

LQT never discussed with St. Julien whether he could work elsewhere at LQT so that he could continue taking his pain medication.

34.

LQT fired St. Julien for his violating LQT's requirement he quit taking narcotic pain medication while off work on shore despite the fact that St. Julien could fulfill the essential functions of his job if he continued taking pain medication while off work when working on shore.

35.

Five months after he was fired, St. Julien started work on March 6, 2017 in Baton Rouge but lost the job on May 15, 2017.  He got another job on July 11, 2017 and is still employed.

36.

St. Julien earned $19/hr at LQT and $21/hr at his Baton Rouge job.  St. Julien spent more, however, on travel for the Baton Rouge position than he had for the LQT job.  St. Julien also did not work a forty-hour workweek there but had at LQT.

37.

St. Julien earns $18/hr at his present position and works about 36 hrs/week.  He pays $500/month in medical insurance there versus $300/month when at LQT.  He pays $275/month in pain medication at his new job versus a $40 co-pay cost when he worked for LQT.  His visits to his pain physician every two months cost $400 versus $40

when he used the insurance provided by LQT.

## CAUSE OF ACTION
### Disability Discrimination under the ADA and La. R.S. 23:322 *et seq.*
38.

The preceding paragraphs are incorporated herein by this reference.

39.

St. Julien is a "qualified individual with a disability" as that term is defined in the ADA.  St. Julien has a bad back caused by spondylosis, cervical radiculitis, and radiculopathy.  When the back injury is fully expressed, it impair's St. Julien's ability to work because of an extreme stiffness in his back, severe pain, an inability to bend over, and lessened ability to twist and pivot his body.

40.

LQT discriminated against St. Julien in violation of ADA and La. R.S. 23:322 *et seq.* on the basis of his disability when it refused to return him to work after he took leave to recover from surgery.  LQT claimed that St. Julien had been unable to work when actually he had been able to work.  LQT told St. Julien he could only return to work if he did not take narcotic pain medication even off duty when he worked on shore.  St. Julien's doctor refused to allow St. Julien to do that.

41.

LQT further violated ADA and La. R.S. 23:322 *et seq* when it refused to enter into the required interactive process with St. Julien to determine whether an accommodation would have allowed St. Julien's return to work.

42.

St. Julien is unaware of any difficulty or expense that would have been required for LQT to have returned him to his or another position at work.

43.

Alternatively, if the Court finds St. Julien had no disability, LQT discriminated against St. Julien because it regarded St. Julien as having a disability or because of a record of a disability.  In fact, LQT regarded St. Julien as having such a severe and permanent disability that this disability, LQT mistakenly reasoned, prevented St. Julien from doing his job.  LQT offered St. Julien no other type of job after it instituted its policy barring anyone from using pain medication even when not at work and on shore. LQT considered St. Julien's disability so severe that it prevented him from returning to a broad class of jobs.

44.

Upon information and belief, LQT's policy barring St. Julien's use of narcotic pain medication anytime is applied to its employees who work in non-office positions. This absolute bar to those employees using narcotic pain medication is a per se violation of the ADA because the LQT policy does not allow a case-by-case assessment of an individual's ability to perform essential functions of the individual's job, with or without an accommodation.

45.

St. Julien works now as a plumber and continues to take physician-prescribed pain

medication.  LQT violated ADA when it fired St. Julien for St. Julien's refusal to not take his physician prescribed pain medication when he is not working onshore.

46.

LQT intentionally violated the ADA and acted with malice or reckless indifference to St. Julien's federally protected rights.

## CAUSE OF ACTION
### FMLA Interference 29 USC Sec. 2615 (a)(1)
47.

The preceding paragraphs are incorporated herein by this reference.

48.

St. Julien took about four weeks of unpaid leave under FMLA in October and November 2016.  Despite his ability to return to work after his FMLA-eligible leave had ended and despite St. Julien having used less than the maximum twelve weeks leave available to him under FMLA, LQT refused to return St. Julien to work at the same or equivalent position that he had had before taking the leave.

## CAUSE OF ACTION
### Declaratory Judgment
49.

Plaintiff is entitled to a declaration that Defendant violated Plaintiff's rights under the FMLA and ADA and an order requiring defendant to take appropriate steps to make him whole.

### Jury Demand
50.

St. Julien respectfully demands a trial by jury on all issues.

**WHEREFORE,** Plaintiff, Alvin C. St. Julien, prays that after due proceedings there

be judgment in his favor and against Defendant LQT:

a. that St. Julien be awarded all back pay, fringe benefits, front pay and other compensation lost as a result of LQT's unlawful conduct in an amount to be determined by the jury;

b. that Defendant pay St. Julien such compensatory and punitive damages as are determined by the jury;

c. that Plaintiff be awarded reasonable attorney's fees, litigation expenses, expert fees, and costs; and

d. that the Court issue a declaratory judgment that LQT violated his rights under the FMLA and ADA; and

e. award such other and further relief as this Court deems necessary and proper, including but not limited to appropriate injunctive relief against any and all ongoing unlawful employment practices.

**Respectfully submitted,**

**BELL LAW FIRM, LLC**

*/s/ Paul F. Bell*
Paul F. Bell (Bar #30391)
4949 Tulane Drive
Baton Rouge, LA  70808
Telephone: 225 284-3235
Facsimile: 888-812-7933   bz9@cox.net
*Counsel for Plaintiff, Alvin C. St. Julien*

## Service Information

Plaintiff mailed this day, December 1, 2017, by USPS certified mail this complaint, *a Notice of Lawsuit and Request to Waive Service of a Summons*, two copies of the *Waiver of the Service of the Summons Citation and Acceptance of Service* and a stamped self-addressed envelope to the defendant's registered agent, Attorney Mark T. Mahfouz, 400 Poydras Street, Suite 1800; New Orleans, LA  70130.  Plaintiff also filed to this Court an unsigned summons.

*/s/ Paul F. Bell*
Attorney for Plaintiff